## DOMINICUS CUTTS *vs.* THE YORK MANUFACTURING COMPANY.

*Where a mortgage is assigned as security for the payment of a debt, and the assignee afterwards, with the knowledge of the assignor, enters to foreclose against both him and the mortgagor, the assignee has the right to waive and release to the mortgagor the entry to foreclose against him without the assent of the assignor; and such waiver is no fraud upon the assignor.*

THIS was a writ of entry demanding a tract of land in *Saco*. The defence was, that *Oct.* 27, 1819, one *Richard Cutts*, then seised of the demanded premises, conveyed the same to the demandant by deed of mortgage, to secure the performance of the conditions of a certain bond; that the defendants had become the owners of the equity of redemption of *R. Cutts*, and were lawfully entitled to redeem the same; and that if any judgment should be rendered, it should be as upon a mortgage only. The demandant replied, that the right to redeem had been foreclosed, and that neither *R. Cutts*, or any one claiming under him, had any right to redeem. It appeared in evidence, that the condition of the mortgage had been broken, the demandant having been compelled, as a surety of *Richard*, to pay the debt against which the mortgage and bond were made to indemnify him, *Dec.* 24, 1823. In 1828, the equity of redemption was sold to Mrs. *Thornton*, a sister of the demandant, to pay a debt due from *R. Cutts* to the estate of her late husband. The demandant, *Jan.* 9, 1830, assigned to the *Atlantic* Bank, doing business in *Boston*, the mortgage and bond, given by *Richard Cutts* to him, to secure a debt due from the demandant to that Bank. On *Dec.* 18, 1830, *G. Thacher*, Esq., as attorney of the Bank, and under a power of attorney, entered upon the demanded premises, in the presence of two witnesses, for the purpose of foreclosing the mortgage made by *R. Cutts* to *D. Cutts*, and also the assignment thereof in mortgage by *D. Cutts* to the Bank, the demand having become payable, and notified *D. Cutts*, and the *Thornton* heirs, then owning the equity of redemption, of his doings. The demandant was not present, when possession was taken, but Mr. *Thacher* had told him previously what he should do, and he made no objection. Mr. *Thacher*, by direc-

tion, and as attorney of the Bank, commenced an action against the demandant on the notes due from him to the Bank, all his real estate having been attached but his interest in this, at the *May* term of the Court of Common Pleas, 1832, which was continued in Court until the *Feb.* term, 1834, when it was dismissed, neither party.   On *July* 1, 1832, the Company, having become the purchasers of the equity of redemption of the *Thornton* heirs, by an agreement of that date, but in fact not executed until *Dec.* 14, 1833, made an arrangement with the Bank, by which that corporation was, after that time, to hold the mortgage for the benefit of the Company, and the Company, on the 7th of *August*, 1832, paid to the Bank, in pursuance of said agreement, the amount due them from the demandant.   On the 14th of *December*, 1833, the Bank, by a writing of that date, under their seal, reciting the entry to foreclose, and stating that it had not been their intention to foreclose the original mortgage against the Company, as owners of the equity, declared that they did not hold possession of the premises to foreclose against said Company, or the owners of the equity of *Richard Cutts*, and released to the Company all right acquired by their entry to foreclose the original mortgage, so far as it respected any acts of the Bank or their agents for that purpose.   On *Dec.* 17, 1833, the demandant paid to the Bank the amount of his debt secured by said assignment of the mortgage, and the Bank reassigned to him the mortgage and bond.   In adjusting the amount due, the Bank charged to the demandant, and the demandant paid to the Bank, the expense of taking possession, both under the assignment and under the original mortgage, including the expense of notifying the *Thornton* heirs, then owning the equity.

The counsel for the defendants requested the Court to instruct the jury, that the Bank had the lawful right to release, acquit, or yield up to the owners of the equity of redemption any right, claim, or power to foreclose said mortgage, acquired by their own acts, or the acts of their agent or agents, after the assignment thereof by said *Cutts* to said Bank, at any time before the said tender to said Bank.   But *Emery J.,* before whom was the trial, declined to give such instruction; and did instruct the jury, that any release or discharge of an entry made by said Bank for the purpose of foreclosing said mortgage, could only be good against

said Bank, and would not be valid and effectual against said *Cutts* without his consent and approbation, if he chose to adopt and ratify the entry made by the Bank, or their agent or agents, for the purpose of foreclosing said mortgage, after the re-assignment by the Bank to said *Cutts.* The verdict was for the demandant, and the defendants excepted both for withholding the instruction requested, and for the incorrectness of that given. Other questions were made and argued; but as a new trial was granted on the consideration of this point alone, the facts and arguments in relation to the others are omitted.

*J. Shepley,* for the tenants, in arguing that the instruction requested should not have been withheld, endeavored to support this general proposition. The mortgagee or his assignee, having once made an entry, or taken possession, to foreclose the mortgage, may at his pleasure relinquish, release, or yield up such entry or possession to the owner of the equity; or even abandon it without his assent. He cited, *Quint* v. *Little,* 4 *Greenl.* 495; *Dexter* v. *Arnold,* 1 *Sumner,* 118; *Fay* v. *Valentine,* 5 *Pick.* 418; *Batchelder* v. *Robinson,* 6 *N. H. Rep.* 12. The acts of the Bank were a relinquishment and waiver of all claim to foreclose the original mortgage. 1 *Cov. & R. Powell on Mort.* 389; *Coventry's* note and cases cited; *Fay* v. *Valentine,* before cited.

In arguing that the instruction actually given was wrong, he contended, that the first part of it necessarily carried with it this consequence; that one acting for himself and in his own right can convey to another a greater interest in land than he has himself, or the waiver must be good against every person claiming under the Bank, if it was good against the Bank.

He argued, that the second principle advanced in this instruction to the jury was clearly wrong for the following causes.

1. After his assignment of the mortgage to the Bank, *D. Cutts* ceased to have any rights whatever in relation to the management of it. He had a mere naked right of preemption, and until he exercised it he was as any other stranger. He could not force the Bank to foreclose, and could not prevent them from doing it, or from commencing it, and again waiving it. The mortgage was a mere chattel interest. The mortgagee was the Bank, and the rights of the mortgagor were in the *Thornton* heirs and in the com-

pany. *Wilson* v. *Troup,* 2 *Cowen,* 195 ; *Baylies* v. *Bussey,* 5 *Greenl.* 161 ; 2 *Cov. & R. Powell on Mort.* 903, *Note O.*

2. Where the payment of the money secured, by the mortgage and the reconveyance are concurrent acts, as in this case between the Bank and the demandant, the mortgagee is never the trustee of the mortgagor. 2 *Story's Eq.* 280, *and note ; Vose* v. *Handy,* 2 *Greenl.* 222 ; *Clark* v. *Wentworth,* 6 *Greenl.* 260 ; *Wade* v. *Howard,* 6 *Pick.* 492 ; *Gray* v. *Jenks,* 3 *Mason,* 520 ; *Jackson* v. *Davis,* 18 *Johns.* 7 ; *Jackson* v. *Blodget,* 5 *Cowen,* 122.

3. If the Court can consider the Bank as the agent of *Cutts* in any respect, yet the doctrine that the principal may ratify the acts of his agent, does not apply, where the agent acts professedly on his own account and in his own name. *Paley on Agency,* 49, 252 ; 2 *Kent's Com.* 629, 630.

4. If the demandant had the power to ratify or reject, to confirm or dissent from, the acts of the *Bank* in relation to the foreclosure, he must ratify the whole or none. He cannot select and ratify such portions, as he chooses, and reject the remainder. *Paley on Agency,* 145, 249, and cases cited ; *Peters* v. *Balistier,* 3 *Pick.* 505 ; 1 *Cov. & R. Powell on Mort.* 390, and cases cited in the note, and particularly, *Chalmers* v. *Bradley,* 1 *Jac. & Walker,* 505. The same authorities show, that the ratification of any part of the acts of an agent is the ratification of the whole.

5. The demandant could not by any ratification of his, set aside the rights of the company previously acquired. *Cutler* v. *Haven,* 8 *Pick.* 490 ; *Crane* v. *March,* 4 *Pick.* 131.

6. Even had the waiver of the entry to foreclose been a wrongful act as against *Cutts,* it is a matter wholly between him and the Bank, and cannot affect the rights of third persons.

7. Had there been reason to believe, that fraud had been practised, that question should have been determined by the jury, and not by the Court. *Sherwood* v. *Marwick.* 5 *Greenl.* 295.

*A. G. Goodwin,* for the demandant, argued in support of the following propositions, and cited the following authorities.

1. The Bank, as mortgagee of the demandant, by entering and taking possession of the mortgaged property for condition broken, held the property in trust for the demandant. *Amherst* v. *Dawling,* 2 *Ver.* 401 ; 1 *Com. R.* 343 ; 1 *Strange,* 403 ; 2 *Cruise*

Cutts v. The York Manufacturing Company.

*Dig. Mort. ch.* 2, § 11; 1 *Mad. Ch.* 512; 4 *Kent's Com.* 3d Ed. 167; 2 *Story's Eq.* 244, 278, 283; *Jackson* v. *Delancy,* 13 *Johns.* 537; *Parsons* v. *Welles,* 17 *Mass. R.* 423; *Angell on Lim.* 123; *Conard* v. *Atlantic Ins. Co.* 1 *Peters,* 441.

2. The Bank, by selling and assigning the notes given by the demandant to them, which were secured by the mortgage, became also the trustees of the company to the extent of their lien upon the mortgaged property, subject to the rights of said *Dominicus Cutts.* 1 *Chitty's Eq. Dig.* 689; 2 *Cruise, Tit.* 15, ch. 2, § 11; 4 *Kent's Com.* 193, 194; 7 *Wheeler's Ab. Mort.* 6th *div.;* *Hatch* v. *White,* 2 *Gall.* 155; 2 *Story's Eq.* § 1016, 1023; *Parsons* v. *Welles,* 17 *Mass. R.* 425; *Crosby* v. *Brownson,* 2 *Day,* 425; *Crane* v. *March,* 4 *Pick,* 136; *Jones* v. *Witter,* 13 *Mass. R.* 304; *Dunn* v. *Snell,* 15 *Mass. R.* 481; *Cutler* v. *Haven,* 8 *Pick.* 490; *Vose* v. *Handy,* 2 *Greenl.* 322.

3. The Bank could not impair the rights of *Dominicus Cutts* without his consent, nor do any thing to prejudice his interest in the premises. *Blennerhassett* v. *Day,* 2 *Ball & B.* 133; *Wilkinson* v. *Stafford,* 1 *Ves. Jr.* 42; *Whelpdale* v. *Cookson,* 1 *Ves.* 9, & 1 *Salk.* 155; *Witter* v. *Witter,* 3 *Peere Wms.* 100; 2 *Cruise, Mort. ch.* 2, § 19, 22, 23, 31; 1 *Mad. Ch.* 455, 534; *Holdridge* v. *Gillespie,* 2 *Johns. Ch.* 30; 2 *Ver.* 84; 3 *Dow,* 128; 4 *Kent,* 165; 2 *Story's Eq.* § 1016; *Stat.* of 1831, *ch.* 39, § 9; *Smith* v. *Dyer,* 16 *Mass. R.* 18.

4. The acts and doings of the Bank, as disclosed in the release or discharge of the entry to foreclose, of *December* 18, 1830, are a gross fraud upon the rights of *Dominicus Cutts,* and are inoperative and void, so far as said acts respect him, unless sanctioned and approved by him, either at the time or since. 1 *Story's Eq.* 261, 305, 319, 320, 326; *Jones* v. *Witter,* 13 *Mass. R.* 304; *Dunn* v. *Snell,* 15 *Mass. R.* 485; *Cutler* v. *Haven,* 8 *Pick.* 490; *Vose* v. *Handy,* 2 *Greenl.* 322; *Wade* v. *Howard,* 6 *Pick.* 492.

5. The justice and equity of this case is opposed to the discharge of the entry to foreclose; and is in favor of the transfer of that entry to *D. Cutts* by the deed of the Bank to him of *December* 17, 1833.

*P. Sprague,* for the Company, enforced the positions taken in the opening, and contended for the pertinency of the authorities cited

to the questions before the Court; replied to the argument for the demandant; and controverted the relevancy of the grounds taken, and authorities cited in his behalf, to the facts in the case.

The case was continued, for advisement, and the opinion of the Court was afterwards prepared by

Weston C. J. — While the President, Directors and Company of the *Atlantic* Bank, were the assignees of the mortgage, given by *Richard Cutts* to the plaintiff, if the defendants, the owners of the equity, would redeem, payment was to be made to the Bank; and all negotiations in relation to that mortgage, were to be made with them. In *July* or *August*, 1832, the defendants, having paid the money due to the Bank, acquired virtually and substantially the interest of the latter. They did not apply the moneys paid to the extinguishment of the mortgage, made by *Richard Cutts*, nor did they in point of form become the assignees of the mortgage, made by the plaintiff; but the Bank became the trustees of that title for their benefit, by the express terms of the instrument of *July*, 1832. The Bank ceased to have any beneficial interest in the principal debt, or the collateral security.

It would seem from the case, as it is presented to us, that from some community of interest, between the defendants and certain of the stockholders and influential directors of the Bank, the latter were disposed to mould their remedies and proceedings, in a manner best calculated to promote the views and interest of the former. The defendants were disposed to make the most of the liabilities of the plaintiff, in the hope, probably, of collecting part of the money due from him to the Bank, keeping on foot for this purpose the suit brought, and the attachment made in their name, and intending also to hold the land, against any claim he might set up, by a foreclosure of the mortgage, executed by him. How far these measures might have been successful, it is unnecessary to inquire; for they were defeated by the payment made by the plaintiff, before the foreclosure against him had been perfected.

From the character of the controversy between these parties, the land must be understood to be of greater value, than the amount due upon the mortgage made by *Richard Cutts*, or than the amount for which the plaintiff was liable to the *Atlantic* Bank.

If then, the defendants, upon the suit in the name of the Bank, had collected part of the sum due to them from the plaintiff, and had also foreclosed the mortgage against him, he would have been subjected to the loss of all, that might have been thus obtained in the action upon his personal security. Having baffled them in this attempt, the plaintiff now turns round upon the defendants, and endeavors to defeat their equity under *Richard Cutts*, which he insists he has a right to do, from the manner in which the business was transacted by the defendants and the Bank. And if such should be the legal result, although the defendants now claim the favor due to mortgagors, who would redeem their pledge, upon a proffer of full payment, there is nothing in their case, which calls for special sympathy.

At any time, prior to the eighteenth of *December*, 1833, they had an undoubted right to have made the land their own, by paying to the Bank the amount due on the mortgage, made by *Richard Cutts*; and this sum thus received, the Bank were bound to apply to the extinguishment of the debt due to them from the plaintiff; and thus both would have been discharged, being about equal in amount. But there is much reason to believe that the defendants and their allies in these transactions, the Bank, combined to collect from him a sum of money for the use of the defendants, and in addition thereto to make the land mortgaged their own, by a foreclosure against him.

The parties stand upon their legal and equitable rights; and we are called upon to determine whether the mortgage of *Richard Cutts* has been foreclosed. Until foreclosure, the mortgagee holds the pledge first, for himself, to the extent of his lien, and secondly, in trust for the mortgagor. And he is bound to ordinary care and diligence, in the preservation and management of the property. The pledge which the Bank received, was subject to a paramount right of redemption in *Richard Cutts* and his assigns. They had a right to receive the money and discharge the first mortgage. If they had abused the trust, and had cancelled the bond and the first mortgage, without payment, what would have been the measure of their liability? They would undoubtedly have been holden, not for the value of the land pledged, but for the amount due, as if they had actually received the money. And this would have

been the whole value of the plaintiff's interest in the pledge. As assignees of the mortgage, they had the control of the remedies provided by law, either to compel payment or to effect a foreclosure. If they might discharge the mortgage before foreclosure, of which we think there can be no doubt, we perceive no sufficient reason why they had not the power to waive and relinquish possession, or any other remedy, which they were at liberty to pursue. They might be liable for the unfaithful management of their trust. Indeed, the Bank had conducted the business, with so little regard to the interest of the plaintiff, that we doubt not he might have held them answerable to him for the whole amount due on *Richard Cutts'* bond, and have required that it should be applied in payment of his notes, if he had not chosen to redeem his mortgage by paying the notes himself.

But when he took back the pledge, he received it in the condition in which it actually remained in their hands. They had waived in favor of the defendants, the assignees of *Richard Cutts,* the foreclosure which had been in a train for consummation. Nor do we think that before the foreclosure had been perfected, the consent of the plaintiff was essential to the validity of the waiver. In the first place, the Bank were the mortgagees in possession, with whom, therefore, the original mortgagor had a right to negotiate. Secondly, they had a right to determine for themselves, whether they would receive the pledge in payment, and thus convert their money into real estate, or whether they would suffer it to remain as collateral to their personal security, the bond. The plaintiff by declining to redeem, so far as he was concerned, might have thrown the mortgage upon them in payment of his own debt, but they would have been left to deal with the first mortgagor at their own discretion.

The entry against the assignees of *Richard Cutts* for condition broken was their act. Their attorney entered by authority from them, and the widow and heirs of *Thornton* were notified, that the Bank would hold for the purpose of foreclosure. The attorney testified, that the plaintiff consented to what was done; but this was by no means necessary to give it validity, nor was it the less their act. They did not profess to do it by the request, or for the benefit of the plaintiff. We are not aware of any reason

why they might not be permitted to waive it, with the assent of the assignees of *Richard Cutts* upon whom it was to bear. Suppose the attorney, the next day after he had taken possession, had, in pursuance of instructions, written to the assignees of *Richard*, that upon further consideration the Bank had concluded to waive their entry for the purpose of foreclosure, might not the assignees have confided in the second notice, as a relinquishment of the first? We think they might. The Bank, while the mortgage was in their hands, represented the plaintiff, the first mortgagee. They were clothed with full power, as his substitute, to treat with the mortgagor. Much more had they authority to determine the continuance, quality and intention of their own acts.

We cannot consider the waiver of the foreclosure a fraud upon the plaintiff. His security, to the amount of his debt, remained unimpaired. The lien continued on the land; and he was at liberty to pursue his personal remedy on the bond. Much of the argument of the counsel for the plaintiff, turns upon the assumption, that the entry against the widow and heirs of *Thornton* was made for him. While he held, he had no desire to foreclose. Why? He would not injure his brother. How does it appear, that he had less sympathy for his widowed sister and her children? He consented to what was done by the Bank against them as well as against himself. He acquiesced in what he could not prevent. When he came to redeem, he paid part of the expense, incurred on account of the mortgage. Rents are credited in the same account; and we see not why a part of the expense necessarily incurred, is not a fair charge in offset. But if the foreclosure had been waived, as we hold that it was, it could not be set up by the act of the plaintiff, in making the payment, or by the Bank in receiving it. We cannot regard the entry to foreclose as his act when done, and it could not be made his by relation, to the prejudice of third persons. Before the payment relied upon as an adoption, had been made, the act had been waived and vacated by those by and for whom it was done.

We have examined the authorities cited for the plaintiff, but are not satisfied that they conflict with the right or competency of the Bank, under the facts in the case to waive their entry to foreclose, against *Richard Cutts* and his assigns. To determine otherwise,

would be giving an undue advantage to the plaintiff over the defendants, who had been thrown off their guard, by confiding in the waiver by his assignees of their own act. If the law however had accorded him this advantage, we should have recognized it with the less reluctance, as experiments were tried by them, which might have subjected him to loss. As upon the facts, we are of opinion, that the equity of the defendants is not foreclosed, the verdict is set aside, and a new trial granted. And we come to this result, with the more satisfaction, as full justice may be done to the plaintiff, by holding the land charged with the full amount of his incumbrance.